UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

BLANCA MARTINEZ, by her next friend, Thelma Martinez,

                       Plaintiff,

-against-

LEXINGTON GARDENS ASSOCIATES, DENNIS OVALLE, L.A. EQUITIES CORP., MANHATTAN NORTH MANAGEMENT CO., INC., AND LEX GARDENS TP4, LLC,

                       Defendants.

------------------------------------------------------------- X

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

17 Civ. 4005 (AKH)

**ALVIN K. HELLERSTEIN, U.S.D.J.:**

      Plaintiff Blanca Martinez, by her next friend, Thelma Martinez ("Plaintiff"), filed this case on May 26, 2017. Plaintiff claims that Lexington Gardens et al. ("Lexington Gardens" or "Defendants") discriminated against Blanca on the basis of her disability by refusing to allow Thelma, her sister and primary caretaker, to live in Blanca's apartment. The complaint, which was amended on July 24, 2017, alleges violations of Fair Housing Act ("FHA"), *see* 42 U.S.C. § 3604(f), the Rehabilitation Act, *see* 29 U.S.C. § 794, and the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL," respectively), *see* N.Y. Exec. Law. § 296 *et seq.*; N.Y.C. Admin. Code § 8-107(5).

      Blanca Martinez has been living in the apartment in question under federal Section 8 subsidies for over thirty years. She is severely mentally handicapped and cannot live alone. After the death of their mother, Thelma Martinez became Blanca's primary caretaker and requested that Lexington Gardens allow her to move into the apartment to care for her sister full time. Defendants have refused to allow Thelma to do so, largely on the ground that she has poor

credit history and a housing court record. Plaintiff seeks a reasonable accommodation under federal, state, and local disability law to allow Thelma to live with and care for her sister. Discovery is now complete. Now before the Court are the parties' cross motions for summary judgment. The facts of the case are not disputed; the sole issue is whether Lexington Gardens failed to provide a reasonable accommodation. For the reasons stated on the record and supplemented herein, plaintiff's motion for summary judgment is granted; defendant's motion for summary judgment is denied.

## Background

Blanca Martinez is a 58-year-old woman. She is intellectually and developmentally disabled and has been diagnosed with Cerebral Palsy. She is unable to care for herself and requires around-the-clock assistance with everyday tasks including cooking, eating, using the restroom, and dressing herself. Plaintiff's diagnosis is supported by numerous medical evaluations, and there is no genuine dispute about her condition, the care she requires, and the practical reality she cannot live alone.

Plaintiff receives federal Section 8 housing benefits and has lived in the disputed apartment for over thirty years. Plaintiff's mother, Maria, was plaintiff's primary caretaker until her death in 2016. When their mother died, plaintiff's sister, Thelma, assumed the role of plaintiff's full-time caretaker. Although Blanca and Thelma apparently have other siblings, none is willing and able to care for plaintiff. Thelma applied for and was granted guardianship of plaintiff by the New York Surrogate's Court in 2017, and she manages virtually every aspect of plaintiff's life, including her finances and daily medical care. There is also no genuine dispute that defendants have been aware of plaintiff's disability for years. Blanca's condition was listed on the family's original housing application in 1984, and her status was noted on yearly Section

8 recertification paperwork filed by her mother. Plaintiff's disability was also specifically raised at least four times during Thelma and her mother's attempts to have Thelma added to the family composition.

Defendants began receiving requests to allow Thelma to move into the apartment as early as 2014, when Maria's heath began to fade and she became less able adequately to care for Blanca. At least five requests followed the first, including one from the New York City Human Resources Administration's Adult Protective Services. *See* Pl. Rule 56.1 Statement, ECF 56, at ¶ 57; *see also* Decl. of Christine Clarke, ECF 58, Ex. 16 (requesting that Thelma be allowed to move into the apartment "because it would be in the overwhelmingly best interest of her sister Blanca"). Defendants have denied every request. Although defendants' justification has shifted in this litigation, when pressed, defendants have principally cited Thelma's poor credit and rental history as the basis for the denial. Specifically, it appears that a prior landlord obtained a housing court judgment against Thelma in 2011, which was later converted into a civil judgment and subsequently vacated by the court.[1]

Despite defendants' refusal to grant an exception, when Maria's illness became severe in early 2016, Thelma moved into the apartment to care for Blanca. Maria died in March 2016 and, facing no viable alternatives to care for Blanca, Thelma remained in the apartment. In the months following their mother's death, Thelma paid plaintiff's monthly rent on time and

---

[1] After her request to move into the apartment was initially denied, Thelma provided a full explanation of this incident to defendants. Thelma claims that the housing court judgment stemmed from her withholding rent due to the unsafe conditions of an apartment in which she lived. After appearing unrepresented in housing court, the landlord agreed to waive any past-due rent if Thelma moved out by a certain date. Despite this resolution, the landlord then obtained a default judgment against Thelma in civil court, which was subsequently vacated and the case was discontinued. Defendants have not disputed this account, but the particular circumstances of Thelma's prior housing issues do not materially affect the outcome of this case. Even assuming that Thelma has a somewhat poor rental and credit history, and would therefore not typically be considered a desirable tenant for Lexington Gardens, the question remains: Is Lexington Gardens required to make an exception as a reasonable accommodation to Blanca's disability? The law mandates that Lexington Gardens do so.

3

without incident until October 2016, when defendants commenced eviction proceedings in New York Housing Court and refused to accept further payments. With eviction proceedings ongoing, plaintiff filed this case under the FHA.

The parties also raise a handful of tangential issues that have arisen over the course of this litigation, none of which is material. First, defendants attempt to reframe the case by arguing that they have not received monthly rental payments from Blanca or Thelma since October 2016. But the record is clear that the only reason that rent has not been paid is because defendants commenced eviction proceedings and refused to accept further payments. The cited reason for the eviction—that Thelma was living in the apartment without authorization—collapses back into the central issue in the case: whether allowing Thelma to live with her sister is a reasonable accommodation under the statute.

Relatedly, defendants also claim that Thelma has failed in her responsibilities as Blanca's guardian because she has not filed Blanca's recertification paperwork with the Department of Housing and Urban Development ("HUD"), which must be refiled yearly to maintain Blanca's Section 8 housing benefits. This too is misleading. Because she is disabled and unable to work, plaintiff receives federally funded Section 8 housing benefits. Section 8, also known as the Housing Choice Voucher program, is a federally funded program administered by HUD that provides low-income families with federal assistance to purchase rental housing on the private market. *See* 42 U.S.C. § 1437f; 24 C.F.R. § 5.601 *et seq.* The amount that a family is eligible to receive depends on the family's income and composition, but the subsidy typically equals the difference between the rent for the unit and 30% of the family's adjusted gross income. *See* 24 C.F.R. § 5.628; *see also Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 296 (2d Cir. 1998) ("When a Section 8 certificate holder finds an apartment that meets

4

the applicable rent guidelines, and the landlord has agreed to participate in the Section 8 program, the tenant pays in rent an amount not exceeding 30% of the tenant's gross income, and the government contracts with the private landlord to pay a subsidy equal to the remainder of the market rent."). Because the federal subsidy varies depending on the family's ability to pay, Lexington Gardens will receive the same rent whether Thelma is permitted to move into the unit or not. *Id.*; *see also* Deposition of R. Colon, ECF 58, Ex. 8, at 161:2–23. As part of the program, voucher recipients are required to complete an annual recertification and report family changes—i.e., who lives in the rental unit and their combined income—to calculate the value of the program subsidy. *See* 24 C.F.R. § 5.657.[2] The recertification process is a cooperative one, requiring owners and program participants to certify the family's structure and income. *See* 24 C.F.R. § 982.551(b)(2) ("The family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements.").

After her mother's death, Plaintiff, aided by her sister and their lawyer, supplied defendants with an interim family recertification packet that included Thelma, her wife Denei, and her stepson Ronnald Mendez to the family composition plan. *See* Decl. of Christine Clarke, ECF 58, Ex. 36. Defendants responded by letter, stating that "[t]he Landlord will not process these documents are [sic] presented" and instructing plaintiff to "resubmit the package with only Blanca Martinez in the family composition." Decl. of Christine Clarke, ECF 58, Ex. 42. This, of course, put plaintiff and her sister in an impossible position. Either Thelma would have to leave her sister without the care she requires, or commit fraud by submitting an inaccurate family recertification form to HUD, causing HUD to incorrectly calculate the value of plaintiff's federal

---

[2] The parties refer to this portion of the recertification as the "family composition plan."

5

subsidy. *See* 24 C.F.R. § 982.551(b)(4) ("Any information supplied by the family must be true and complete."); *id.* § 982.551(k) ("The members of the family must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs."). The record is clear that the delay in recertifying plaintiff's Section 8 benefits has been caused by defendants' obstruction and refusal to comply with federal discrimination law. In any event, this saga is secondary to the central question of the case, which turns on whether defendants denied plaintiff a reasonable accommodation. The recertification process is merely an offshoot of that underlying question.

## Discussion

### A. Standard of Review

Under the well-established summary judgment standard, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a Court must "view the evidence in the light most favorable to the party opposing summary judgment, . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).

Whether a requested accommodation is reasonable is "a fact-specific, case-by-case inquiry not only into the benefits of the accommodation but into its costs as well." *Fulton v. Goord*, 591 F.3d 37, 44 (2d Cir. 2009) (internal quotation marks omitted); *see also Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016) ("Reasonableness analysis is 'highly fact-

6

specific, requiring a case-by-case determination.'" (quoting *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996))).

B. **Reasonable Accommodation Law**

"To establish discrimination under either the [FHA] or the ADA, plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). This case involves only the third of these statutory theories.

By its text, the FHA makes it unlawful "[t]o discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any . . . renter because of a handicap." 42 U.S.C. § 3604(f)(1). The FHA then defines "discrimination" to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B). As the Second Circuit has explained, this subsection does not "require[] that the denial of modifications or accommodations be the result of a discriminatory animus toward the disabled." *Austin*, 826 F.3d at 627. Instead, a plaintiff need only show "that the requested modification or accommodation [is] reasonable and that the denial(s) result . . . in so diminishing that person's use and enjoyment of the premises as to constitute a denial of equal opportunity." *Id.* To establish a claim based on denial of a reasonable accommodation, "a plaintiff with an alleged disability must establish that: (1) she is disabled within the meaning of the FHA, (2) the defendant knew or should have known of this fact, (3) an accommodation may be necessary to afford her an equal opportunity to use and enjoy the dwelling; (4) such accommodation is reasonable; and (5) the defendant refused to make the requested accommodation." *Tuman v. VL GEM LLC*, No. 15 CIV. 7801 (NSR), 2017 WL 781486, at *5 (S.D.N.Y. Feb. 27, 2017). In

7

other words, plaintiffs "must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Tsombanidis*, 352 F.3d at 578 (internal quotation marks omitted).

Through the reasonable accommodation requirement, "the law 'imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons.'" *Picaro v. Pelham 1135 LLC*, No. 14-CV-7398 JPO, 2014 WL 4678265, at *2 (S.D.N.Y. Sept. 19, 2014) (quoting *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994)). In general, a landlord is required to make a reasonable accommodation provided that doing so does not impose an undue hardship or burden. *Austin*, 826 F.3d at 630 ("A requested accommodation is reasonable where the cost is modest and it does not pose an undue hardship or substantial burden on the rule maker."); *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014) ("Requested accommodations are reasonable where the cost is modest and they do not pose an undue hardship or a substantial burden on the housing provider."); *Tsombanidis*, 352 F.3d at 578 ("A defendant must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden.").[3]

In addition to her FHA claim, plaintiff also raises claims under the federal Rehabilitation Act, *see* 29 U.S.C. § 794, and the New York State and City Human Rights Laws,

---

[3] The parties—especially defendants—make passing reference to the burden shifting framework developed in the Title VII context. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell-Douglas* framework, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the decision. If the defendant does so, the burden shifts back to the plaintiff to show that the stated rational is pretextual. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002) (applying the *McDonnell Douglas* framework to claim of intentional discrimination brought under the FHA). This framework is not applicable here. Plaintiff's claim is premised not on intentional discrimination, where the burden shifting framework is applied, but to the alleged failure of Lexington Gardens to provide a reasonable accommodation. *See Tsombanidis*, 352 F.3d at 573; *see also* 42 U.S.C. § 3604(f)(3)(B).

see N.Y. Exec. Law. § 296 *et seq.*; N.Y.C. Admin. Code § 8-107(5). Their inclusion does not alter the Court's analysis. First, "Section 504 of the Rehabilitation Act prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting 29 U.S.C. § 794(a)). "Because the standards adopted by the two statutes are nearly identical, [courts] consider the merits of [FHA and Rehabilitation Act] claims together." *Id.* Housing discrimination claims brought under the NYSHRL are similarly analyzed under the same framework as claims brought under the FHA. *See Olsen*, 759 F.3d at 153; *see also Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y. 2012)

Although FHA and NYCHRL claims were once analyzed concurrently, the NYCHRL was amended by the 2005 Restoration Act and is no longer considered "coextensive with its federal and state counterparts." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *see also* Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85. In light of the 2005 amendment, the Second Circuit requires courts to "analyze NYCHRL claims separately and independently from any federal and state law claims." *Id.* at 109; *see also Pena-Barrero v. City of New York*, No. 14-CV-9550 (VEC), 2017 WL 1194477, at *14–15 (S.D.N.Y. Mar. 30, 2017) (analyzing claims separately). "In amending the NYCHRL, the City Council expressed the view that the NYCHRL had been 'construed too narrowly,'" *Mihalik*, 715 F.3d at 109, and sought to expand its scope through two rules of construction:

> First, it created a one-way ratchet, by which interpretations of state and federal civil rights statutes can serve only as a floor below which the City's Human Rights law cannot fall. Second, it amended the NYCHRL to require that its provisions be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with

9

provisions comparably-worded to provisions of [the Restoration Act], have been so construed.

*Id.* (internal quotation marks omitted) (internal citations omitted). As discussed below, this distinction does not affect the analysis in this case, for defendants' conduct violates both the FHA and its state and local analogs.

### C. Plaintiff's Requested Accommodation is Reasonable

To establish a reasonable accommodation claim under the FHA, plaintiff must demonstrate each of the following: (1) that she is disabled within the meaning of the FHA, (2) that defendants knew or should have known this fact, (3) that the accommodation may be necessary to afford the plaintiff an equal opportunity to use and enjoy the dwelling, (4) that the requested accommodation is reasonable, and (5) that defendants refused to make the requested accommodation. *Tuman*, 2017 WL 781486, at *5. Because I find that no genuine dispute of material fact exists as to any of these elements, plaintiff's motion for summary judgment is granted.

#### 1. Disability, Notice, and Denial

As an initial matter, Defendants concede that plaintiff is disabled within the meaning of the FHA. Conceded or not, there is no genuine dispute on this point. The FHA defines "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h).[4] Blanca suffers from Cerebral Palsy and her treating physician has stated that she "suffers from intellectual and developmental

---

[4] The other statutes at issue in this case have similar definitions. The Rehabilitation Act defines disability by reference to the Americans with Disabilities Act, 42 U.S.C. § 12102, which provides that "[t]he term 'disability' means . . . a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(9)(B). The NYSHRL defines the term "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." NY Exec. Law. § 292(21). Finally, the NYCHRL defines "disability" as "any physical, medical, mental or psychological impairment, or a history of such impairment." N.Y.C. Admin. Code § 8-102(16)(a).

disabilities that impair her ability for speech communication, and comprehension." Decl. of Christine Clarke, ECF 58, Ex. 15, at 2. She is also "incapable of understanding the nature and consequences of medical, legal, or economic decisions." *Id.* Another physician has explained that Blanca is intellectually disabled, is "incapable of managing . . . herself," and has an IQ of 52. Decl. of Christine Clarke, ECF 58, Ex. 14, at 2. According to her doctors, Blanca requires "one to one supervision at all times and needs assistance in many basic self care skills such as bathing and dressing." *Id.* at 1. Her condition is considered permanent. There is no genuine dispute that plaintiff is disabled within the meaning of the relevant statutes and that she requires full-time care. And as explained above, defendants do not dispute that they were on notice of plaintiff's disability and nonetheless refused to allow Thelma to leave in the apartment as a reasonable accommodation.

2. Necessity

Having conceded these elements, defendants instead focus on the necessity and reasonableness of the requested accommodation. As to necessity, the FHA provides that a landlord must "make reasonable accommodations in rules, policies, practices, or services, when such accommodations *may be necessary* to afford [a disabled] person with equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Defendants contest this element by arguing that adding Thelma to the family composition and allowing her to live in the apartment is not necessary because Blanca can "remain in the Apartment and have another family member or friend apply to take care of her." Memorandum of Law, ECF 60, at 9. Defendants' position ignores reality and the law of the Second Circuit.

The reasonableness and necessity of a requested accommodation requires a fact-intensive, case-by-case analysis, *see Austin*, 826 F.3d at 630, and "the duty to make reasonable

11

accommodations is framed by the nature of the particular handicap," *Salute*, 136 F.3d at 301. In the particular circumstances of this case, it is abundantly clear that allowing Thelma to live in the apartment is the only way for Blanca to have an "equal opportunity to use and enjoy" the apartment. 42 U.S.C. § 3604(f)(3)(B). Blanca cannot live alone and requires around-the-clock care. Now that her parents have passed, she has no other family or friends willing and able to care for her. Either Thelma is allowed to move into the apartment to care for her sister, or Blanca will have to move out. There is no genuine dispute that the requested accommodation is necessary.

    3.    <u>Reasonableness</u>

The next issue is whether the accommodation plaintiff seeks is reasonable. Based on the particular facts and circumstances of this case, I so hold.

As explained above, "[a] requested accommodation is reasonable where the cost is modest and it does not pose an undue hardship or substantial burden on the rule maker." *Austin*, 826 F.3d at 630. Blanca suffers from Cerebral Palsy, cannot communicate verbally, and requires full-time care. There is no dispute that she cannot care for herself or live alone. Balanced against this reality is the cost of granting the accommodation and the hardship on defendants, neither of which withstands meaningful scrutiny.

To support their refusal to grant the requested accommodation, defendants largely rely on Thelma's poor credit and rental history. This reason is spurious and, indeed, for the reasons previously discussed, may be only an inaccurate pretext. First, defendants concede that, under Section 8, Lexington Gardens will receive the same rent regardless of whether Thelma moves into the unit. *Salute*, 136 F.3d at 296. Second, because Thelma is responsible for managing Blanca's finances and social security payments, Thelma would be required to pay

Blanca's rent regardless. Third, Thelma has paid monthly rent on time and without incident until defendants commenced eviction proceedings and refused to accept further payments. There is no concrete reason to believe that Thelma will be unable to make rental payments. Plaintiff's immediate, urgent medical condition and need for care make it reasonable that Thelma live in the apartment.

Defendants also argue that its renter screening policies, which consider credit scores and rental history, were adopted "pursuant to" HUD guidance on administering Section 8 properties. *See* Memorandum of Law, ECF 60, at 10. This too is misleading. Although HUD regulations and guidance allow landlords participating in Section 8 to screen applicants based on credit and rental history, that same guidance also instructs participating landlords that "[a]ll screening criteria" must be "consistently applied to all applicants in a non-discriminatory fashion and in accordance with all applicable fair housing and civil rights laws." *See* HUD Handbook Section 4350.3 § 4.7. More specifically, HUD's regulations and Occupancy Handbook instruct that participating owners must make reasonable accommodations "in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit." 24 C.F.R. § 100.204; *see also* HUD Handbook Section 4350.3 § 2-5(C) ("[A]n owner may have to modify rules, policies, practices, procedures and/or services to afford a person with a disability an equal opportunity to use and enjoy the housing."). Any suggestion that defendants' screening polices are *required* by federal law, regardless of a need for modification to afford equal opportunity to a disabled person, is simply incorrect.

Boiled down, defendants' central argument is as follows: "Blanca's request to have Thelma reside in the apartment [stet], is unreasonable because it would require Lexington

13

Gardens to violate its own policies adopted pursuant to federal regulations, namely, its policy of denying tenancy to individuals with history of rent delinquency and poor credit." *See* Memorandum of Law, ECF 60, at 10. The problem, of course, is that requiring a landlord to "violate its own policies" is *precisely* what a reasonable accommodation may be and what federal law requires. The plain text of § 3604(f)(3)(B) requires landlords "to make reasonable accommodations in *rules, policies, practices*, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B) (emphasis added). As the Supreme Court has explained in the ADA context: "[b]y definition any special 'accommodation' requires the employer to treat an employee with a disability differently, *i.e.*, preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002). Defendants' argument misstates Lexington Gardens' obligations under federal law, which expressly require deviations from neutral rules when necessary and reasonable under the circumstances.

Defendants' other justifications fare not better. For instance, defendants claim that they learned through Thelma's deposition that she previously subleased an apartment without authorization. But such a sublease has no support in the record. Defendants claim also that Thelma moved into the apartment without authorization, thereby violating the terms of the lease. But Thelma did so only after their mother died, and only because her sister needed care. This merely reframes the central question in the case—whether plaintiff's requested accommodation is reasonable. Defendants also cite the fact that Thelma's wife and step-son moved into the apartment with her, but this too merely distracts from the central issue in the case. Defendants never raised any objection to Thelma's family moving in until after this

14

litigation began, and the landlord previously allowed up to six people on the lease. *See* Def. Rule 56.1 Statement, ECF 61, at ¶ 17. In any event, Thelma's wife and step-son moved out of the apartment in February 2018 and have no plans to return. *See* Pl. Rule 56.1 Statement, ECF 56, at ¶ 13–14. None of these peripheral objections is compelling.

Defendants also rely heavily on *Williams v. New York City Housing Authority*, 879 F. Supp. 2d 328, 330 (E.D.N.Y. 2012), but the case is distinguishable. In *Williams*, an allegedly disabled plaintiff sought to succeed his mother, who had recently died, as the tenant of record in the apartment in which he had once lived as a child. *Id.* at 330–31. At the time of her death, the plaintiff's mother was the only tenant of record. *Id.* at 331. Consistent with the NYC Housing Authority's "extensive rules and regulations that serve to limit tenants' ability to add residents to their households," which were implemented according to a federal consent decree, the plaintiff's request was denied. *Id.* In granting summary judgment for the defendant, the court explained that requiring the requested accommodation "would be patently unreasonable," for "the [NYC Housing] Authority would find itself whipsawed between the conflicting obligations of the federal consent decree and the requirements of the FHA and its state and city analogs." *Id.* at 338. Nothing similar is at play here. Defendants do not face the choice between violating federal law and complying with a requested accommodation. And moreover, the plaintiff in *Williams* did not seek to move into the apartment to care for an ailing family member, but applied to be added to the lease only after she passed away.

Although not perfectly analogous, courts have consistently held that landlords are typically required to make reasonable accommodations to otherwise neutral policies, such as allowing tenants to own a service animal, and waiving a first-come, first-serve policy on parking spots for tenants with limited mobility. 24 C.F.R. § 100.24(b); *see also, e.g.*, *Tuman*, 2017 WL

15

781486, at *5–7. Allowing Thelma to live in Blanca's apartment in spite defendants' generally applicable rental policies is comparable to these well-established examples, and plaintiff's request, in light of the circumstances of this case, is eminently reasonable.[5]

As stated on the record, this holding does not require that Thelma's name be added to the lease, with the succession rights attendant thereto, provided that Thelma be permitted to live in the apartment unimpeded and that Lexington Gardens cooperate fully in the yearly Section 8 recertification process. Thelma shall be permitted to live in the disputed apartment only during Blanca's life as a reasonable accommodation to Blanca's disability.

In sum, defendants are required by the FHA and its state and local counterparts to permit Thelma Martinez to live in the disputed apartment to care for her disabled sister. Without such an accommodation, Blanca will be deprived of an "equal opportunity to use and enjoy a dwelling," to which she is entitled by federal law. 42 U.S.C. § 3604(f)(3)(B). By refusing to do so, defendants have violated the FHA, along with its state and local analogs.

---

[5] This case is also distinguishable from the so-called "economic accommodation" cases, which hold that "an accommodation is not 'necessary' to afford a disabled person access to equal housing opportunity when the accommodation sought does not directly ameliorate an effect of the disability." *Marks v. BLDG Mgmt. Co.*, No. 99 CIV. 5733 (THK), 2002 WL 764473, at *7 (S.D.N.Y. Apr. 26, 2002); *Salute*, 136 F.3d at 301 ("[I]t is fundamental that the law addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps."). Unlike in cases like *Salute*, plaintiff is not seeking to force Lexington Gardens to participate in a voluntary federal assistance program under the guise of the reasonable accommodation provisions of federal discrimination statutes. *Salute*, 136 F.3d at 301.

## Conclusion

For the reasons stated in this opinion, plaintiff's motion for summary judgment is granted; defendant's cross motion for summary judgment is denied. The clerk is instructed to terminate the motions (ECF 54, 59). As the prevailing party, plaintiff is also entitled to reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2). Plaintiff shall file any such motion no later than September 7, 2018.

SO ORDERED.

Dated: August 22, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge